IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 09-cr-00383-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. ROBERT B. KNOWLTON,

    Defendant.

---

### GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENT

---

    The United States of America, by David M. Gaouette, United States Attorney and Robert E. Mydans, Assistant United States Attorney, files this response to the above-styled motion filed by the defendant.

    The defendant seeks an Order from this Court excluding from trial any statement made by Mr. Knowlton on June 11, 2009, and any evidence derived from the statement. The basis for the requested Order is a violation of the Fifth Amendment to the United States Constitution.

    The search warrant was executed at the Grand Junction residence of defendant Knowlton on June 11, 2009. The defendant was at the residence when the agents arrived to execute the search warrant.  The interview in question was conducted by BLM Special Agent Shannon Tokos and BLM State Staff Ranger Perry McCoy.  On December 15, 2009 while talking with Special Agent Tokos on the telephone about the

1

facts and sequence of events surrounding the interview, it was learned for the first time that the interview was not only recorded, but it was recorded twice as both agents had tape recorders.  I secured copies of the recording and had one immediately delivered to defense counsel and well as alerting him to the fact that there was a recording.  Having said that, we are in the unusual position of having a recording of the interview and most of the facts will not be in dispute.

The portion of the interview that is pertinent to the issue raised in this motion by the defendant takes up approximately the first five minutes of the recording.  A copy of the transcript from the first five minutes is attached as Attachment A.  The actual tape recording is also available for the Court if it becomes necessary or simply if the Court wants to hear it. A copy of the transcript of the entire interview has been previously provided to defense counsel.

Basically, the recording of the interview began with Special Agent Shannon Tokos identifying herself, Staff Ranger McCoy identifying himself, and the fact that Robert Brooks Knowlton was also present.  Special Agent Tokos explained that they were at the residence to serve a search warrant and identified it by location and number.  She advised Mr. Knowlton that he was not in custody. There is a discussion about a consent to search the detached garage, the trailer, and the vehicle.  Mr. Knowlton indicated that he wanted to talk to his attorney and his attorney wanted to be present.[1]  Mr. Knowlton tried to contact an attorney and was unable to.  The recorded

---

[1] The government takes the position that Mr. Knowlton knew of other search warrants in this investigation that had been executed two days prior to the search at Mr. Knowlton's residence.  In fact, Mr. Knowlton told the interviewing agents that he had removed some of the prohibited bird feathers because he expected to be searched.

interview was continued. Special Agent Tokos said they went off the record to address several issues. The primary issue was the consent to search. After being unable to reach the attorney, Mr. Knowlton agreed to the consent to search and executed a Department of the Interior Form 9260-14 Consent to Search (Attachment B).

The recorded conversation continued with a discussion about Advice of Rights and Miranda. Mr. Knowlton to this point had never said he did not want to consent to search or that he did not want to speak with the agents. There had been no questioning to this point and there was, therefore, no resumption in questioning. Special Agent Tokos provided Mr. Knowlton with a Department of the Interior Form 9260-13 Advice of Rights (Attachment C). The entire form was read to Mr. Knowlton and in two places he signed and acknowledged understanding the rights and agreeing to speak with the agents. Mr. Knowlton signed the form as well. Special Agent Tokos also signed and dated the form. After the consent to search and the Miranda/Advice of Rights discussion, the interview began.

The government in the first place takes the position that *Miranda* warnings were not required before speaking to this individual. He was not in custody. He was free to leave. There were no charges pending against him. It is settled that investigative agents may interview a target or suspect if he is not in custody and not under arrest for any charges. That situation does not trigger *Miranda*. If an individual is questioned and says he wants a lawyer, that may well be the end of the inquiry. That also is not what happened here.

It is well settled that interrogation of an accused must cease once the accused invokes the right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). First, Mr.

Knowlton was specifically advised that he was not in custody at the very outset. Therefore, he was not in custody and free to leave. Second, he was not charged with any crime, so he was not accused. Third, prior to being advised of his Miranda Rights, he had not been questioned. Only preliminary matters such as identification, whether there were firearms in the residence, and the consent to search had been discussed. Fourth, there was no resumption in questioning, because no questioning had taken place. Fifth, Mr. Knowlton, while he asked to be allowed to contact a lawyer and was allowed to do so, never said he wanted a lawyer present before any questioning took place, nor did he ever refuse to answer questions. The government takes the position that Mr. Knowlton never invoked the right to counsel. The defense would probably argue that at the point that he said he wanted to contact a lawyer, he had invoked his right to counsel and the government was precluded from any further questions. If the question of whether he invoked his right to counsel was unclear, what is clear is that the interviewing agents started from the beginning to fully advise Mr. Knowlton of his rights. He had not been given his Miranda Rights earlier, that was the first and only time.

To determine the validity of a *Miranda* waiver, courts analyze the totality of the circumstances surrounding the questioning. *Moran v. Burbine*, 479 U.S. 412, 421 (1986). *U.S. v. Curtis*, 344 F.3d 1957, 1066 (10th Cir.2003) held that "only if the totality of the circumstances surrounding the interrogation reveal [sic] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." Courts also consider the explicitness of the waiver. *United States v. Hack, 78*2 F.2d 862, 866 (10th Cir. 1986) held that the waiver was valid

because each defendant signed 2 different *Miranda* waivers and an express waiver is "usually strong proof of validity of that waiver." *See also United States v. Alvarez*, 142 F.3d 1243, 1248 (10th Cir. 1998) (waiver valid because statement was made within 2 ½ hours of *Miranda* warnings. In this case, the statement was made immediately after the *Miranda* warning had been given and the consent signed by the defendant. If the invocation of the right to remain silent is ambiguous or equivocal, further questioning may be permissible. *United States v. Nelson*, 450 F.3d 1211-1212, (10th Cir. 2006) asked the question whether the defendant's statement was "sufficiently clear that a reasonable police officer in the circumstances would understand it to be an invocation of a *Miranda* right." The question in *Nelson* was whether the statement "I guess I am ready to go to jail then" was an invocation of the right to remain silent. The court held that it was not a clear invocation of the right to remain silent and continued questioning was permitted.

     In determining whether a defendant's statements are knowing and intelligent, Supreme Court precedent requires consideration of whether the defendant appreciated the consequences of his actions. *See Johnson v. Gibson*, 229 F.3d 1163, 2000 WL 1158335 **8 (10th Cir. Aug. 16, 2000), *citing Patterson v. Illinois*, 487 U.S. 285, 296-97 (1988); *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The voluntariness inquiry turns on whether the statement or admission was the product of a free and deliberate choice rather than intimidation, coercion or deception and focuses on police overreaching. *Id.* (citing *Moran*, 475 U.S. at 421 and *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). Both of these inquiries are based on the totality of the circumstances. *Id. See*

*Connelly*, 479 U.S. at 167 ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").

The application of both inquiries to the case-at-bar establishes that the defendant's statements were voluntary. There is no evidence of police coercion in this case, and none can be shown by the mere fact that law enforcement officers conducted an interview with the defendant.

Further, whether there has been a valid waiver of *Miranda* rights depends on the totality of the circumstances, including the defendant's age, education and intelligence, the defendant's physical and mental characteristics, the length of his detention, whether physical abuse was employed, and the location of the questioning. *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987), *cert. denied*, 488 U.S. 983 (1988). Here, there is no evidence which suggests that defendant would be unusually susceptible to coercion because of his age, intelligence or education. There is also no evidence which suggests that the defendant could not understand what he was saying or doing at the time he was interviewed. Instead, the evidence shows that the defendant agreed to be interviewed and then gave clear, accurate and coherent answers containing specific and detailed information. Defendant was able to recall events and places. The defendant was not physically abused or threatened during his interview. The totality of these circumstances establishes that defendant's waiver of his Miranda rights was voluntary.

Moreover, the defendant signed a written waiver of *Miranda* rights form. It is

well-settled that signing such a waiver form is "strong proof" of the voluntariness of the waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Fountain*, 776 F.2d 878, 886 (10th Cir. 1985).

A similar "totality of the circumstances" analysis is used to determine whether a defendant's incriminating statements were made voluntarily. In making such a determination, five factors are considered: "(1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his] constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Rith*, 164 F.3d 1323, 1332-33 (10th Cir.1999) (*quoting United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997)). In this case, the same factors that support the waiver of defendant's *Miranda* rights also support the voluntary nature of defendant's incriminating statements. As a result of the *Miranda* advisement, the defendant was essentially told that he did not have to answer any questions. He was further advised that he was not under arrest. Defendant was never threatened with or subjected to physical punishment by the interviewing agents; and the agents' questioning was neither harassing nor prolonged. Furthermore, defendant was not unusually susceptible to coercion because of his age or lack of intelligence or education. All of these circumstances establish that defendant's incriminating statements were voluntary.

This case is much clearer as can be seen by the transcript and the tape itself. The defendant did not invoke his right to remain silent, questioning had not taken place prior to *Miranda* warnings, and the *Miranda* warnings were clearly given, clearly

understood, and clearly waived.

WHEREFORE, the defendant's Motion to Suppress the Statement should be denied.

Respectfully submitted this 4th day of January, 2010.

DAVID M. GAOUETTE
United States Attorney


s/__Robert E. Mydans_____
Robert E. Mydans
Assistant United States Attorney
1225 17th Street, Suite 700
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
bob.mydans@usdoj.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify on this 4th day of January, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Jeffrey S. Pagliuca**
Haddon, Morgan & Foreman, P.C.
Email: jpagliuca@hmflaw.com

                                                       s/__Deborah Sisung_____
                                                      Deborah Sisung
                                                      United States Attorney's Office
                                                      1225 17th Street, Suite 700
                                                      Denver, CO 80202
                                                      Phone: (303) 454-0100
                                                      Fax: (303) 454-0402
                                                      deborah.sisung@usdoj.gov