## HOLD HARMLESS AGREEMENT

Whereas, the Salt Lake City Division of the Federal Bureau of Investigation (FBI) is conducting an undercover investigation involving the excavation, purchase, sale and interstate transportation of stolen artifacts;

Whereas, Gardiner Antiquities (GA), a for profit sole proprietorship, owned and operated by Ted Dan Gardiner, desires to assist the FBI in conducting this undercover investigation;

Whereas, Ted Dan Gardiner is the only employee of GA; and

Whereas the FBI and GA desire to record their respective interests and obligations;

Now, therefore, the FBI and GA agree as follows:

1. GA agrees to allow the FBI to direct and control all purchases and sales of artifacts by GA during the course of this undercover investigation. While the FBI can not guarantee the length of the undercover investigation, it is estimated that the undercover investigation will initially last for a period of 180 days and may be extended as needed for additional periods of up to 180 days or until the objectives of the investigation have been accomplished.

2. At the direction of the FBI, GA agrees to purchase certain archeological objects or artifacts during the course of this undercover investigation. All terms of the transactions will be determined by the FBI, after consideration has been given to any input provided by GA. The method, manner and timing for all purchases will be decided by the FBI. Possible purchasing mechanisms include, but are not limited to, hand-to-hand transactions, e-mail transactions, GA web site transactions, US Mail/FedEx, and telephonic transactions.

3. At the direction of the FBI, GA agrees to sell certain archeological objects during the course of this undercover investigation. These objects will be provided by the FBI and all terms of the transaction will be determined by the FBI, after consideration has been given to any input provided by GA.

4. The FBI will supply all necessary funding for any and all FBI directed purchases during this investigation. GA

shall be responsible for the funding for all "non FBI directed" personal or business purchases or sales.

5. GA will immediately, or as reasonably practicable, provide to the FBI the cash generated as the result of any FBI directed sale during this undercover investigation.

6. GA agrees to notify the FBI of any artifact transaction (purchase or sale) which does not involve the undercover investigation one day prior to the transaction occurring.

7. Should it be deemed by the FBI that the artifact being sold or purchased by GA outside the undercover investigation would harm the undercover investigation, GA agrees to table the transaction for 90 days. If no resolution to the matter is agreed upon by parties after the 90 days have elapsed, GA may conduct the transaction. However, this in no way authorizes GA, or any of its agents or employees, to engage in any illegal transactions.

8. GA agrees to allow the FBI complete and unfettered access to its computer system at any time during this undercover investigation. GA agrees to any unannounced audit of its computer and financial records at any time during this undercover investigation.

9. GA agrees to allow the FBI complete and unfettered access to its computer system, web site, and business records at any time during this undercover investigation. GA agrees to an unannounced audit of its computer, financial and business records at any time during this undercover investigation. The FBI may, at its discretion and as needed, copy or electronically image any and all documents or records pertaining to GA during the course of this investigation. The purpose for this is to ensure that the FBI has complete knowledge of GA's activities during the course of this undercover investigation and to ensure that GA's activities in no way are harming or are in conflict with this undercover investigation.

10. It is understood that the FBI, at its sole discretion, will control all investigative activities, including determining who will be the subjects of the undercover investigation.

11. GA understands that all decisions regarding any prosecution arising from the undercover investigation are the sole province of the United States Attorney's Office and the

United States Department of Justice.

12. While every effort will be made to protect any GA employee involved in this investigation, the FBI can not guarantee the safety of the GA employee during this undercover investigation. This undercover operation involves an element of risk and some individuals who are the subjects of this investigation may have the capacity to cause death and injury to others, including GA employees. GA understands and hereby agrees that the FBI will not be held liable for any injuries or death to any GA employee that occurs as a result of activities related to this investigation other than for those injuries resulting directly from the negligence or wrongful conduct by FBI employees.

13. GA, its employees, officers and/or agents, hereby acknowledge that by allowing the FBI to use GA to assist in conducting this undercover investigation, there is a possibility that its future value, reputation and/or profitability may be reduced or damaged when the public learns of GA's cooperation with the FBI. GA, knowing of the above information, hereby agrees to hold harmless, the FBI, its agents, employees and all other individuals associated with this undercover investigation, for any such loss in value, damage to reputation or other economic loss as a result of GA's involvement in this investigation. GA's sole remedy for any damages suffered as a result of participation in this investigation will be a federal tort claim for damages resulting from the negligent, intentional or wrongful acts of FBI personnel which cause personal injury to GA employees or damage to physical property or equipment owned by GA.

14. Any recovered property and/or evidence, to include stolen archeological artifacts, which are acquired at the direction of the FBI, will remain in the possession of the FBI for control and safekeeping. Every effort will be made by GA to deliver all recovered property and/or evidence to the FBI immediately or as reasonably practicable. GA will be entitled to retain those artifacts purchased legally as a part of GA's ordinary business activities and which were not purchased at the direction of the FBI. However, GA agrees to keep detailed records and documents regarding each of the GA business transactions during the course of this investigation in the event they are needed at the time of trial.

15. Neither GA nor its employee are an employee, partner, member of a joint venture, associate or agent of the FBI, nor will they identify or hold themselves out to be such.

16. Neither GA nor its employees shall have the authority, either actual or implied, to obligate and/or bind the FBI to any contractual obligation beyond the directed sales/purchases of artifacts by the FBI.

17. The liability for any negligent acts of FBI employees during the course of the undercover investigation will be borne by the FBI pursuant to the Federal Tort Claims Act. GA employees are solely responsible for their own negligent and/or wrongful conduct and GA hereby agrees to hold the FBI harmless for any such acts committed by GA employees during the course of this investigation.

18. GA will in no way reveal, disclose or disseminate to any third party, the existence of this investigation, information concerning this undercover investigation or the identities of any undercover FBI Agents or Cooperating Witnesses without the prior written approval of the FBI.

19. GA hereby acknowledges that the FBI is required to comply with certain laws, rules and regulations in order to conduct this undercover investigation. In particular, instructions will be provided to GA at the initiation of this undercover investigation to govern the activities of all parties and their usage of GA's website and email. GA hereby agrees to comply with these directions and guidelines and to cooperate fully throughout this investigation so that all parties involved will be able to comply with these guidelines.

20. This agreement shall commence on the date of acceptance by GA as signified by his/her signature or the date of the final approval for the undercover investigation, whichever is later, and will continue for 180 days or until the goals or objectives of the investigation have been reached. This agreement may be terminated by either party by delivery of written notice to terminate.

This document, along with the attached personal services agreement signed on the same date, constitutes the full and complete agreement between GA and the FBI. Modifications to this agreement will have no force and effect until such modification is reduced to writing and signed by the parties.

*[Signature]*                 3-2-07

Timothy J. Fuhrman           Date
Special Agent in Charge

*[Signature]*                 3/15/2007

FBI Contracting Officer          Date
Maury V. Taylor
Contracting Officer
Federal Bureau of Investigation

*[Signature]*                 3/17/07

Ted Dan Gardiner            Date
for Gardiner Antiquities